IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JOHN J. SMITH                                                                                                  PLAINTIFF
ADC #154230

v.                                            2:20-cv-00009-KGB-JJV

JEREMY ANDREWS,
Warden, EARU, ADC, *et al.*                                                                          DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the recommendations. Failure to file timely objections may result in waiver of the right to appeal questions of fact. Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**RECOMMENDATION**

**I.     INTRODUCTION**

John J. Smith ("Plaintiff") is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC). On July 17, 2017, another prisoner severely beat Plaintiff with a lock in a sock. (Doc. 5.) Plaintiff sustained several fractures to his skull, arms, and hands and had to be airlifted to a hospital in Memphis, Tennessee for treatment. (*Id*.)

1

In this *pro se* action filed pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants violated his Eighth Amendment rights by failing to protect him from that attack. (*Id.*) Specifically, he says: (1) ADC Director Wendy Kelley did not appropriate enough funds to the EARU to hire a sufficient number of security guards; (2) Defendants EARU Warden Jeremy Andrews, Warden James Dycus, and Deputy Warden Emmer Branch did not adequately train, staff, or supervise the security staff; and (3) Defendants Captain Tiffany Munn and Lieutenant Leroy Golatt failed to properly supervise the guards monitoring the barrack where the attack occurred.[1]   (*Id.*)

Defendants have filed a Motion for Summary Judgment arguing the claims against them should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies. (Docs. 31, 32, 33.) Plaintiff has not filed a Response, and the time to do so has expired. After careful consideration and for the following reasons, I recommend the Motion be GRANTED, and Plaintiff's claims against Defendants Kelley, Andrews, Dycus, Branch, Munn and Golatt be DISMISSED without prejudice.

## II.   SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must

---

[1] I have previously issued two Partial Recommended Dispositions suggesting all other claims and Defendants be dismissed without prejudice. (Docs. 6, 28.) Both are still pending at this time.

demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  ANALYSIS

#### A.  The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements,

and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

### B. The ADC's Exhaustion Procedure

The ADC policy in effect at the time of the alleged constitutional violations was Administrative Directive 14-16, which establishes a three-step grievance procedure. (Docs. 31-1, 31-2.) First, the inmate must attempt informal resolution of a problem by submitting a Unit Level Grievance Form to a designated problem solver *within fifteen days of the incident*. (Doc. 31-2 at 5) (emphasis added.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, *personnel involved* or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 5-6)(emphasis added.) Inmates are cautioned a "[g]rievance must *specifically name each individual* involved in order that a proper investigation and response may be completed" and that "inmates who fail to name *all parties* during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id*. at 4-5) (emphasis added.) And, the grievance form itself reminds prisoners to include the "name of personnel involved." (*Id.* at 19.) The problem solver must respond to the informal resolution within three working days. (*Id.* at 7-8.)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance on the same Unit Level Grievance Form within three working days. (*Id*. at 7-8.) The warden or his designee must provide a written response to the formal grievance within twenty working days. (*Id*. at 10.)

Third, an inmate who is dissatisfied with the warden's response or does not timely receive a response, must appeal within five working days to the appropriate ADC Assistant Director. (*Id*.

at 11-12.) The ADC Assistant Director must provide a written response within thirty working days. (*Id.*) "A decision or rejection of an appeal at this level is the end of the grievance process." (*Id*. at 12.) Finally, Administrative Directive 19-20 includes the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at 17.)

### C.      Plaintiff's Grievances

The ADC Inmate Grievance Coordinator-Appeals states in his sworn Declaration that Plaintiff filed three grievances (EA-18-1415, EA-18-1455, EA-19-59) about the July 17, 2017 attack. (Doc. 31-1.) Plaintiff does not refute that contention.

On November 20, 2018, which was sixteen months after the attack, Plaintiff filed EA-18-1415, which said:

> On 7-18-17 I was attacked by an inmate with a lock. If there would have been timely security check by the guards assigned to 17 barracks on the day of the attack it's possible that maybe I would not of been attacked. The injuries I sustained have disabled me in many ways which will last for the rest of my life.

(Doc. 31-3 at 5.) On November 29, 2018, the grievance was rejected as untimely, without addressing the merits, because it was not filed within fifteen days of the incident as required by the ADC's policy. (*Id.* at 4.) Plaintiff's appeal said: "I don't think my grievance should be rejected BC I have brain trauma and it affected my thinking." (*Id.*) On December 6, 2018, the appeal was rejected because Plaintiff did not sign or date it, as clearly required on the appeal form. (*Id.* 3-4.)

On December 10, 2018, Plaintiff filed EA-18-1455, which said:

> On 11-21-18, I wrote an informal resolution took it to step two on 11-29-18. I still have not got a response on step one or a acknowledgement for step two. Or a rejection from Unit Level Grievance.

5

(Doc. 31-3 at 9.) In the response, the Warden explained that the prior grievance was rejected on November 29, 2018, because it was filed more than fifteen days after the incident. (*Id.* at 10.) On appeal, Plaintiff wrote: "I disagree with this response because I have brain trauma and memory loss and have trouble remembering things at time. I don't believe it's untimely because I was in ICU in another state within the 15 days to file step one or any grievance." (*Id*.) The ADC Deputy Director affirmed the Warden's decision on appeal because he agreed the grievance was untimely filed. (*Id.* at 11.)

On January 14, 2019, Plaintiff filed EA-19-59, which said:

> July 18, 2017 here at EARU I was attacked by an inmate that used a lock in a sock. For some reason the lock on the bed can be removed by inmates that was used to put me in ICU in another state bc of a crush skull and both hands and arms broke. Now I have brain damage and loss of thinking and remembering things at times. The series 5560 American Lock that ADC provides to lock our box with. ADC has previous knowledge that the locks have been and are and continue to be numerous assaults and are a major threat to inmates. That going to leave me with health problems for the rest of my life.

(*Id*. at 17.) The Warden rejected the grievance, without reaching the merits, because it was not filed within fifteen days of the incident. (*Id.* at 16.) Plaintiff's appeal said: "How can I file a grievance when I was in the ICU in Regional One in Memphis, TN for more than 2 months due to the *incident*. I had to go to rehabilitation to learn how to read, write, and talk." (*Id.* at 16) (emphasis in the original.) On appeal, the ADC Assistant Director agreed with the Warden's conclusion and did not reach the merits of Plaintiff's claim. (*Id*. at 15.)

### D. Analysis

Defendants argue these three grievances are not proper exhaustion as to the claims Plaintiff is raising against Defendants Andrews, Dycus, Branch, Munn, Kelley, and Golatt in this lawsuit. I agree for the following reasons.

First, Plaintiff did not specifically name Defendants Andrews, Dycus, Branch, Munn,

6

Kelley, or Golatt in any of these grievances as he was clearly required to do by the ADC's exhaustion policy. And, as previously mentioned, that requirement was repeated on the grievance forms Plaintiff completed. Thus, Plaintiff did not satisfy the PLRA's exhaustion requirement. *See Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (finding improper exhaustion when a prisoner failed to comply with the ADC's requirement to specifically name the defendants involved in the grieved matter); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (same); *Hamner v. Kelley*, 737 F. App'x 801 (8th Cir. Sept. 14, 2018) (unpublished decision) (same).

Second, Plaintiff did not allege in any of these grievances, as he does in this lawsuit, that the attack was due to inadequate funding, improper training, or a lack of proper supervision of security personnel. Instead, he said the attack happened because a guard or guards did not conduct timely security checks on July 18, 2017, and unspecified ADC officials knew locks had been previously used by inmates to attack other prisoners. To satisfy the PLRA, a prisoner must fully exhaust his administrative remedies as to the specific claim he is raising against each defendant in his lawsuit. *See Burns* 752 F.3d at 1141 (inadequate exhaustion when the "ADC was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit); *Townsend*, 898 F.3d at 784 (inadequate exhaustion when a prisoner's grievance did not contain "the specific factual allegations that would later appear in his federal complaint"); *Kozohorsky v. Harmon*, 332 F.3d 1141, 1143 (8th Cir. 2003) ("[W]hen multiple prison condition claims have been joined . . . the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to *all* of the claims") (emphasis in the original). Plaintiff's failure to do so prevents him from pursuing with his deficient funding, improperly training, and inadequate supervision of subordinate claims, from the first time in this lawsuit.

Fourth, ADC officials rejected Plaintiff's appeal of EA-18-1415 without reaching the

merits because he did not sign or date it on the clearly labeled lines that were immediately under where he wrote his reasons for appealing the warden's decision. (Doc. 13-1 at 3, 4.) As previously discussed, to satisfy the PLRA, a prisoner must properly comply with the grievance rules of the incarcerating facility. *See Jones*, 549 U.S. at 218; *Woodford v. Ngo,* 548 U.S. 81, 90 (2006) (administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits").

Finally, ADC officials rejected grievances EA-18-1415 and EA-19-59 (which are the only two grievances that deal with the alleged failure to prevent the July 18, 2017 attack) without reaching the merits because both documents were filed more fifteen days after the attack in violation of the ADC's policy. Plaintiff said he was unable to meet that deadline because he was in the hospital or rehabilitation recovering from his injuries. The PLRA requires prisoners to exhaust their "available" administrative remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016), the United States Supreme Court narrowly defined administrative remedies as being "unavailable" when: (1) the prison's grievance process "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use" because "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See also Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019). It is questionable whether Plaintiff's assertion of mental and physical incapacities would fall fit into any of these three narrow circumstances.[2] And,

---

[2] Prior to *Ross*, some courts held that mental and physical impairments could be a basis for excusing the exhaustion requirement. *See, e.g.*, *Michalek v. Lunsford*, 2012 WL 1454162 (E.D Ark. April 5, 2012) (unpublished decision) (finding a prisoner's mental illness prevented him from

in *Ross*, the Supreme Court emphasized there are no "judge-made exceptions," such as "special circumstances" or good cause, to the PLRA's proper exhaustion requirement. *Id*. at 1857.

However, I do not need to decide whether mental and physical infirmities made administrative remedies "unavailable" to Plaintiff for two reasons. First and foremost, despite being late, Plaintiff's grievances were procedurally flawed because they did not specifically name the Defendants, they did not raise the same claims he is pursuing in this lawsuit, and one grievance was not properly appealed. Importantly, prison officials did *not* by-pass these procedural flaws and reach the merits of his claims. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits"). Second, according to the ADC records provided by Defendants, Plaintiff was released from medical/rehabilitate care and returned to the EARU on July 12, 2018, which was four months before he filed his first grievance about the attack on November 20, 2018. (Doc. 31-4.) Plaintiff has not explained why he could not have exhausted his administrative remedies within fifteen days of his return to the EARU. And, Plaintiff's grievances (as well as his pleadings in this case) demonstrate he is able to clearly articulate his thoughts and arguments. For these reasons, I conclude Plaintiff has failed to properly exhaust his available administrative remedies against Defendants Andrews, Dycus, Branch, Munn, Kelley, and Golatt.

That being said, I am not unsympathetic to the serious injuries Plaintiff sustained during the attack. And, I realize he may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical

---

filing a grievance); *Braswell v. Corr. Corp. of America*, 419 F. App'x 622, 625-26 (6th Cir. 2011) (reversing summary judgment where there was "substantial doubt" as to whether a prisoner was "mentally capable of filing a grievance"); *see also Days v. Johnson*, 322 F.3d 863, 867-68 (5th Cir. 2003) (holding that a prisoner's broken hand prevented him from exhausting his administrative remedies), *overruled by implication on other grounds, Jones*, 549 U.S. at 216.

role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures"). And, the Supreme Court has made it clear that dismissal without prejudice is "mandatory" if a prisoner's claims have not been properly exhausted. *Jones*, 549 U.S. at 211.

**IV. CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. 31) be GRANTED, and Plaintiff's claims against Defendants Andrews, Dycus, Branch, Munn, Kelley, and Golatt be DISMISSED without prejudice.

2. It be certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

Dated this 6th day of January 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE